**IN THE UNTIED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| RIVERHOUNDS ACQUISITION GROUP, LP | : | Bankruptcy Case No.: 14-21181 |
| | : | |
| Debtor. | : | Chapter 11 |
| | : | |
| _____ | : | |
| | : | Docket No. |
| RIVERHOUNDS ACQUISITION GROUP, LP | : | |
| | : | Hearing Date: |
| Movant, | : | Response Date: |
| | : | |
| v. | : | |
| | : | |
| FIRST NATIONAL BANK OF PENNSYLVANIA, | : | |
| AND URBAN REDEVELOPMENT AUTHORITY OF | : | |
| PITTSBURGH AND PITTSBURGH URBAN | : | |
| INITIATIVES SUB-CDE 3, LP, | : | |
| | : | |
| Respondents. | : | |

**EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING DEBTOR-IN-POSSESSION FINANCING AND GRANTING OF LIEN AND PRIORITY ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 364(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(c)**

AND NOW, comes the Debtor, Riverhounds Acquisition Group (hereinafter "RAG" or the "Debtor"), by and through its undersigned counsel, Leech Tishman Fuscaldo & Lampl, LLC, and files this Emergency Motion for an Interim Order Authorizing Debtor-In-Possession Financing and Granting of Lien and Priority Administrative Expense Pursuant To Section 364(c) of the Bankruptcy Code and Bankruptcy Rule 4001(c) (the "DIP Motion"), setting forth as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction over this Motion is proper under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). 11 U.S.C. §§ 105 and 364 and F.R.B.P. NO. 4001 provide the statutory and procedural basis for the relief requested in the DIP Motion.

**BACKGROUND**

2. On March 26, 2014 (the "Petition Date"), RAG filed a voluntary petition for protection under Title 11, Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code").

3. Also on March 26, 2014, a voluntary petition under Chapter 11 of the Bankruptcy Code was filed by Riverhounds Event Center, LP ("REC") as a related case (the "REC Bankruptcy").

4. RAG is a Pennsylvania Limited Partnership, organized and existing under the laws of Pennsylvania with an address of 510 West Station Square Drive, Pittsburgh, PA 15219.

5. REC is a Pennsylvania Limited Partnership, organized and existing under the laws of Pennsylvania with an address of 510 West Station Square Drive, Pittsburgh, PA 15219.

6. RAG's general partner is Riverhounds Event Center Management, LLC ("RECM").

7. RAG's general partner is Riverhounds Acquisition Group Management, LLC ("RAGM").

8. RAG is the owner and operator of the Pittsburgh Riverhounds, a professional soccer team (the "Riverhounds").

9. The Riverhounds play their home games at a stadium located at 510 West Station Square Drive, Pittsburgh, PA 15219 (the "Stadium").

10. The Stadium is used by, and the home of, the Pittsburgh Riverhounds.

11. The Stadium is owned by REC and REC is a party to that certain Ground Lease dated December 19, 2011, by and between Riverhounds Event Center, LP ("Lessee") and Station Square Gaming, LP ("Lessor") for the use of the land located at 510 West Station Square Drive, Pittsburgh PA 15219 (the "Leased Premises").

12. RAG continues to operate its business and manage its property as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

13. At this time, no official committee of unsecured creditors' (the "Committee") has been appointed.

14. Further, no trustee or examiner has been appointed or requested.

**RELIEF REQUESTED**

15. RAG requires Debtor-in-Possession financing to assist in the payment of expenses associated with the general administration of the Chapter 11 case as well as the ongoing affairs of the Debtor including, but not limited to, the costs associated with the operation and management of the Stadium.

16. The "DIP Lender" has agreed to provide post-petition financing to REC in accordance with the terms and conditions set forth in the Order attached hereto.

17. Pursuant to Section 364(c) of the Bankruptcy Code, if the Debtor:

(c) … is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the Court, after notice and a hearing, may authorize the obtaining of credit or the occurring of debt –

(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

18. RAG is not able to obtain unsecured credit pursuant to Section 364(a) or (b) of the Bankruptcy Code.

19. By this DIP Motion, RAG seeks authority from this Court to borrow from Shallenberger Investments, LLC ("Shallenberger Investments, LLC" or the "DIP Lender") a sum of up to $358,439 (the "DIP Loan"). The DIP Loan will be used to pay costs associated with the general administration of the Chapter 11 case, including ongoing related expenses of the Debtor as set forth more particularly in the

13 Week Cash Flow Budget (the "DIP Budget") attached as Exhibit "A" to the proposed Order attached hereto.

20.    Shallenberger owns a limited partnership interest in RAG in the amount of 510,000 units, which represents 51% ownership. In addition, Shallenberger is the 51% owner of RAGM. Shallenberger is a creditor of RAG with unsecured amounts allegedly owed totaling approximately $444,568.29 having advanced those amounts to fund certain prepetition obligations of the Debtor.

21.    The Debtor requests authorization to obtain post-petition financing from the DIP Lender in an amount not to exceed $358,439.00 (the "DIP Loan"), bearing interest beginning on the date any such financing is advanced at the Prime Rate as published in the Wall Street Journal, and maturing on the earlier to occur of (i) (90) days from the date of this Interim Order (the "DIP Maturity Date"), (ii) conversion or dismissal of this case or the related REC bankruptcy case, or (iii) upon a sooner material adverse event in these proceedings or the related REC bankruptcy case, including but not limited to the failure of this Interim Order to be confirmed by the Court on a final basis within (30) days hereof.

22.    Interest will accrue only upon the amount of financing actually advanced by the DIP Lender to the Debtor and there shall not be any other financing charges associated with the DIP Loan.

23.    The DIP Loan shall be advanced and applied by the Debtor only to costs and expenses specifically set forth in the DIP Budget.

24.    The obligations of the Debtor under the DIP Loan (the "DIP Obligations") shall: (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute allowed administrative expense claims in the Cases having priority over all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code (collectively, "Superpriority DIP Claim"); (ii) at all times be senior to any rights arising under Section 546(c) of the Bankruptcy Code; (iii) pursuant to Section 364(c)(2) of the Bankruptcy Code, at all times be secured by a perfected priority lien and security interest on all property of the Debtor subordinate only to the valid liens and perfected security interests,

if any, in their relative priority, of First National Bank of Pennsylvania, Urban Redevelopment Authority of Pittsburgh, Pittsburgh Urban Initiatives Sub-CDE 3, LP, Modular Space Corporation and Deere & Company; (iv) pursuant to Sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, be secured by a perfected lien and security interest upon all of the tangible and intangible property of the Debtors (other than avoidance claims arising under Chapter 5 of the Bankruptcy Code).

25. Any credit extended and loans made by the DIP Lender under the DIP Loan shall be deemed to have been extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

26. The administrative priority of the DIP Loan shall also be subordinate only to: (i) the payment of quarterly fees to the Office of the United States Trustee; (ii) the superpriority administrative claims of FNB, URA and the CDE granted by this Court pursuant to the order approving use of cash collateral and the fees and expenses of the Debtor professionals and Official Committee of Unsecured Creditors' professionals.

27. The attached Order shall constitute the Security Agreement between the Defendants and the DIP Lender and no party shall be required to take any further actions to perfect said security interests.

28. If the DIP Lender or any other entity owned or controlled by Terrance C. Shallenberger, Jr., is the successful sponsor of a Chapter 11 Plan of Reorganization for the Debtor pursuant to the Bankruptcy Code, the DIP Loan, upon consent of the DIP Lender, may be converted to an equity position in the new or reorganized entity that results from the Plan.

29. The Debtor submits that the best interest of RAG's estate and its creditors will be served by granting RAG authority to enter into the DIP Loan, which will provide RAG with adequate funds necessary for the general administration of the Chapter 11 case and the ongoing operations of the Debtor.

WHEREFORE, the Debtor, Riverhounds Acquisition Group, LP, respectfully requests that this Court enter an Order substantially in the form attached hereto authorizing the DIP Loan with Shallenberger Investments, LLC as well as any further relief which this Court deems to be just and proper.

Dated: March 27, 2014

respectfully submitted,

LEECH TISHMAN FUSCALDO & LAMPL, LLC

By: */s/ John M. Steiner*
John M. Steiner, Esq.
PA ID No. 79390
Crystal Thornton-Illar, Esq.
PA ID No. 93003
525 William Penn Place
28th Floor
Pittsburgh, PA 15219
(412) 261-1600 (Phone)
(412- 227-5551 (Fax)
jsteiner@leechtishman.com
cthornton-illar@leechtishman.com